# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

       Plaintiff,                :        Case No. 3:03-cr-107
                                                also Civil Action No. 3:04-cv-384

                                                District Judge Thomas M. Rose
      -vs-                                    Chief Magistrate Judge Michael R. Merz
                                     :

JOHWAN SATTERFIELD,

       Defendant.

---

## REPORT AND RECOMMENDATIONS

---

       This case is before the Court on Defendant's Motion to Vacate, Set Aside, or Correct pursuant to 28 U.S.C. § 2255, the collateral remedy provided to federal prisoners in lieu of habeas corpus (Doc. No. 25). The United States has filed an Answer (Doc. No. 34) and Defendant - Petitioner has filed a Reply in support (Doc. No. 35). The case was initially assigned to Magistrate Judge Sharon Ovington pursuant to this Court's General Order of Assignment and Reference and has recently been transferred to the undersigned pursuant to the authority contained in the same General Order.

       Defendant pleads the following claims for relief:

> **Ground One:** The Defendant's attorney was ineffective for failing to challenge the unconstitutional stop of the vehicle he was driving.
>
> **Supporting Facts:** The stop of the vehicle the Defendant was driving was not based on reasonable suspicion.
>
> **Ground Two:** The Defendant's attorney was ineffective for failing to move for suppression of evidence obtained from the unconstitutional stop.

1

> **Supporting Facts:** The evidence found on the Defendant, found on his girlfriend, and in the vehicle was/is the "fruit of the unconstitutional stop of the vehicle" he (the Defendant) was driving.
>
> **Ground Three:** The Defendant's attorney was ineffective for failing to challenge and move for suppression of his (the Defendant) confession.
>
> **Supporting Facts:** The Defendant's confession was coerced by the unconstitutional threat of the arrest of his girlfriend when "no 'legal basis' existed for threatening to do so."
>
> **Ground Four:** The Defendant's attorney was ineffective for failing to challenge and move for suppression of the "Affidavit" used to obtain the "Warrant for Arrest" for his (the Defendant) arrest.
>
> **Supporting Facts:** The "Affidavit" used to obtain the Defendant's "Warrant for Arrest" was/is based on unconstitutionalities [sic].
>
> **Ground Five:** The Defendant's attorney was ineffective for failing to challenge and move for suppression of all photo-lineups of him.
>
> **Supporting Facts:** The photo-lineup by the undisclosed prosecution witness was uncounseled. Defendant's counsel could not interview said witness, and the procedure can not be proven not to have been suggestive and thus was unconstitutional and inadmissible.

(Motion, Doc. No. 25, at 2-3.)

**Procedural History**

Proceedings against Defendant were commenced by a Criminal Complaint and attached Affidavit sworn to be F.B.I. Special Agent Robert M. Buzzard before United States Magistrate Judge Sharon L. Ovington on August 21, 2003 (*United States v. Satterfield*, Case No. M-3-03-298). The Complaint charged Defendant with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of using a firearm in connection with the bank robbery, in violation of 18 U.S.C. § 924(c). Defendant was arrested on the warrant the same day. On August 25, 2003, Judge Ovington found probable cause to believe he had committed both offense, bound him over

to the grand jury, and ordered him held without bond (Doc. No. 7). The grand jury also found probable cause and returned an indictment on August 26, 2003 (Doc. No. 8). The Federal Public Defender for the Southern District of Ohio was appointed as counsel (Doc. No. 4) and subsequently filed a Motion to Suppress Identifications (Doc. No. 13) and to Suppress Statements (Doc. No. 14). Judge Rose set those Motions for hearing, but before they were heard, Defendant entered into a Plea Agreement with the United States which provided that if Defendant would plead guilty to Count 2, Count 1 would be dismissed (Doc. No. 17). Pursuant to that Agreement, Defendant pled guilty to Count 2 and was sentenced on December 19, 2003, to the mandatory minimum of seven years incarceration on that charge (Doc. Nos. 21 and 22). The instant Motion was timely filed thereafter on October 29, 2004.

## Analysis

### Generally Applicable Law

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F. 3d 491, 496-97 (6th Cir. 2003).To obtain relief under 28 U.S.C. §2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780, 99 S. Ct. 2085, 60 L. Ed. 2d 1634 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which

inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974), quoting *Hill v. United States*, 368 U.S. 424, 428-429, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

A motion to vacate under §2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, §2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

An ineffective assistance of counsel claim may be brought on direct appeal, but is preferably brought in a 2255 motion. Procedural default doctrine does not bar the 2255 motion even if the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500; 123 S. Ct. 1690; 155 L. Ed. 2d 714 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999).

All five of Defendant's claims are for ineffective assistance of counsel. The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing

4

>that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

>Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

>The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F. 3rd at 337, 359 (6th Cir. 2001), quoting *Meeks v. Bergen*, 749 F. 2nd 322, 328 (6th Cir. 1984).

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing

5

*Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). To show prejudice the new evidence that a habeas petitioner presents must differ in a substantial way – in strength and subject matter – from the evidence actually presented at sentencing. *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005)(contains long analysis of cases finding no prejudice).

The same standards apply in evaluating ineffective assistance claims in cases which resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203, 209 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58, 88 L. Ed. 2d at 210.

**Grounds One**

In his first and second grounds for relief, Defendant claims his counsel was ineffective for failing to challenge the constitutionality of the initial traffic stop. The facts which the arresting officers had available to them in making the stop were these as set forth in the Affidavit of Special Agent Buzzard in support of the arrest warrant: The National City Bank branch at 4359 West Third Street was robbed at gunpoint by two black males on August 20, 2003, at 2:42 p.m. Currency, including some contained in an Everfresh juice box was taken. The robbers were observed to enter a black Chevrolet Suburban with Ohio license number AJ32JU parked in front of the bank and drive

west on Third Street. Very shortly later a Dayton Police Officer, Scott Bernstein, found that automobile abandoned in the 100 block of Almond Street; a registration check showed the car had been reported as stolen.

      Dayton Police Lieutenant John Huber located a witness in the vicinity of the abandoned Suburban who advised that she had seen a white Dodge Neon with Ohio license number AH91SA, occupied by a single black male, park in that block at 1:50 p.m. The driver, whom the witness described, exited the vehicle carrying clothing and entered a dark colored Suburban, driven by another black male subject, nearby. Several minutes later the Suburban returned, the two black males exited it, and they got into the Dodge Neon, driving south on Almond toward Third Street. A registration check on the Neon's license tag showed that it was owned by Enterprise Rental and rented to April Jackson. An area-wide police broadcast described that car.

      At approximately 3:30 p.m., Dayton Police Officer Michael Baker observed the same car traveling north in the 2300 block of N. Main St. Dayton police officers attempted to stop the car, but the driver fled. A police pursuit lasting several miles was initiated and ended when the Neon crashed near the intersection of Hoke Road and Westbrook Road in Clayton Ohio. Defendant was the driver of the neon. After the crash and he exited the vehicle and attempted to flee on foot. The two passengers in the car were April Jackson and Defendant's minor child.

      Defendant claims these facts were insufficient to justify the police stop. In the first place, he claims Agent Buzzard lied in claiming that a registration check was run on the Neon on August 20, 2003, because the printout on the registration received in discovery is dated the next day. That hardly proves Agent Buzzard is a liar; the fact that a printout of the registration was obtained on August 21, 2003, does not prove that police did not have a verbal report on the registration the day before. Certainly police do not have to wait on a written copy of a registration printout to act on it. In any event, the fact that the car was registered to Enterprise and rented to Ms. Jackson was not

material in attempting to make the stop. What was material was that a citizen witness had observed a black male get out of the getaway car and get into this car which was identified by make, color, and license tag number. Additionally and importantly, police reasonable suspicion that the driver of the Neon was engaged in criminal behavior of some kind was markedly enhanced when, instead of stopping on the police signal, Defendant attempted to flee, both in the car and then on foot after the car crashed.

These facts gave rise to a reasonable suspicion that the drive of the Neon was a person who had engaged in the bank robbery and gave the police good grounds to stop the car to inquire. Lieutenant Huber had a reasonable suspicion that the black male driving the Neon with that license number had been involved in the robbery and the suspicion was heightened by Defendant's flight.

Defendant argues that at the time of the stop, he was not occupying the car with another black male, but with a female and a minor. He does not deny, in fact he emphasizes, that there was a time gap between the robbery and stop, and that time would have been sufficient for one of the black males to get out of the car. He claims he violated no traffic laws, but the stop was not based on any perceived traffic violation. He claims he was not wearing the same clothes or shoes that the robber was described as wearing, but that would not have been evident to the police following the car. Thus none of the facts he cites would have dispelled the reasonable articulable suspicion that the driver of this car was involved in the robbery and some of them enhance that suspicion. And then, of course, there was the flight.

Thus Defendant's argument that his attorney was ineffective for failure to claim the stop was unconstitutional is without merit and therefore did not constitute ineffective assistance of counsel: it is very likely that any attempt to suppress the stop would have been unsuccessful. Grounds One and Two are without merit.

**Ground Three**

In Ground Three, Defendant claims his attorney was ineffective for failing to file a motion to suppress his confession. This claim is completely contradicted by the record: defense counsel did file a motion to suppress the confession on the grounds it was involuntary (Doc. No. 14). Of course, Defendant abandoned that motion when he pled guilty. Ground Three is without merit.

**Ground Four**

In Ground Four, Defendant claims his counsel was ineffective for failing to move to suppress the Affidavit in support of the arrest warrant. This Ground for Relief does not state a claim on which relief can be granted under 28 U.S.C. § 2255. Defendant asserts the Affidavit contains inaccurate and illegally obtained information. To the extent that information was the fruit of the traffic stop, it could be suppressed only by attacking the stop, an attack which would have been unsuccessful for the reasons given above as to Grounds One and Two. Beyond that, there would have been nothing to suppress. The Affidavit itself was never admitted into evidence against the Defendant except for purposes of issuing the arrest warrant and there is no allegation that the arrest on the warrant yielded additional evidence against the Defendant. In particular, the physical evidence from the car and Defendant's confession had already been obtained before he was arrested on the warrant. He was not detained solely on the basis of the warrant, but on the basis of the evidence presented to Judge Ovington at the preliminary examination. Even if the Court were to find that the arrest warrant was based on a defective affidavit, that would not vitiate the conviction – Defendant is now held on the basis of a commitment order on the conviction and not on anything in the Affidavit. To put it another way, an arrest warrant affidavit is just a preliminary step in a

criminal prosecution. If it were improperly issued, any evidence obtained as a result might be suppressed, but the warrant itself would not be.

Ground Four is without merit.

### Ground Five

In Ground Five Defendant asserts that his counsel was ineffective for failing to move to suppress pre-trial identifications in photographic line-ups. Here again as with Ground Three, the docket contradicts this claim: counsel did indeed file a motion to suppress the pre-trial identifications (Doc. No. 13). Defendant of course abandoned that claim when he decided to plead guilty.

Ground Five is without merit.

### Conclusion

All five asserted Grounds for Relief are without merit. The first two depend upon a view of what sort of reasonable articulable suspicion is needed for a traffic stop which does far beyond what the law requires. Grounds Three and Five are flatly contradicted by the docket, and Ground Four states a claim which is not cognizable under § 2255. The Motion to Vacate should be denied. Because no reasonable jurist would disagree with this conclusion, Defendant should be denied leave

to appeal *in forma pauperis* and any requested certificate of appealability.

March 9, 2007.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).